Case number 21-5116, Monty Silver and Monty Silver Limited, an Israeli corporation, at balance, versus Internal Revenues Service, et al. Mr. Zell for the at balance, Mr. Klimas for the at lease. Good morning, your honors. Good morning, Mr. Zell. Proceed when you're ready. May it please the court. My name is Mark Zell and I'm representing the appellants Monty Silver Limited, together with my colleague, Noam Shriver. We're both here from our principal office in Jerusalem, Israel. Good morning, your honors. We'd like to reserve three minutes' rebuttal. When Congress enacted the Regulatory Flexibility Act in 1980, it had a very clear purpose in mind, and that is to require federal agencies across the board, including Treasury and IRS, to take into account during the rulemaking process the interests of small business, and particularly with respect to the issue of compliance costs. You won't find it in the codified version of the RFA, but you will find it in the preamble to the public law, which appears in public law 96354, 94 stat 1164 paragraph 3, which says specifically that the Congress was concerned about the impact of federal rulemaking on the compliance costs incurred by small businesses. Mr. Zell, it would be helpful if you would focus on whether your challenge caused the harm that your client claimed. Particle 3 standing is, after all, the cardinal issue in this case, and our position here today, your honors, is that both Monty Silver and Silver Limited incurred actual injury, former future injury, future compliance costs that would be a result of the application of regulations that issue a challenge in this case. Now, I think it would be helpful to recognize that the regulations that are challenged in this case are a cluster of regulations. That's something that the RFA itself contemplated agencies could do under 605C. This not only included the regulations under 965, which was the precipitating statutory provision that gave rise to the regulations at issue here, but also under section 962 and other sections, which are all combined. All the amendments were combined into a single rulemaking, both in February of 2019. What's the injury? The injury, as I said, your honors, is the future compliance cost. It would be caused to the plaintiffs in this case when they go, as they have done, to take the actual distribution of earnings and profits in subsequent years. Now, it's true, as the government says, that the transition tax here was fully paid. The future compliance cost, I understand the record, and correct me if I'm wrong, but the future compliance costs were not something that Mr. Silver alleged he was aware of at the outset of this suit? Well, what I would say is that he was quite aware of the fact that 962 would result in future compliance costs. In fact, he spent a great deal of time trying to persuade the agency during the rulemaking process about this fact, and that's something you will find in the JA, your honors, but it is, you'll see reference to this in the part of the, I think it's an ECF, let me just take it, CF-39-3, which the lower court did not allow us to supplement the administrator, but Mr. Silver was aware that he, after all, he's a tax payer, a tax lawyer, he would have to be filing annual returns, and this is a closely held company of his, his law office in Israel, 100% owned. In order to survive and provide the expenses for his family and for himself, he would be taking actual dividends in the future. Although, did the record show or the complaint that he had ever, that Limited had ever issued a dividend previously? There's nothing in the complaint that shows that he took a dividend prior to 2018, and the reason is that at that time, before the imposition of the transition tax, the TCJA, there wasn't any real reason for him to do so. He was able to provide for himself and for his family from his, from the salary that he took from the Israeli law company. And the declaration supporting the future injury for purposes of summary judgment, where evidence was called for, that declaration was filed in support of a motion for reconsideration, the 59E motion? Well, Your Honor, we'll note that several declarations were filed by Mr. Silver and the companies during, during the course of the litigation below. The last one was going on in the district court and the, where I would note that the district court addressed this Article III standing issue, Your Honor, on three separate occasions, and each time applied a different standard. So as the, it was kind of trying to deal with a moving goalpost type of situation. So when, when we got to the motion for reconsideration stage, he applied a supply and a declaration, which stated for the first time that he would be making this distribution, this dividend for the purposes of providing for his personal and family needs. And in fact, he did so. So I think I'm understanding correctly that he didn't, at the time he filed suit, have any expectation that he would be issuing, that Silver Limited would be issuing these dividends. Well, in his personal case, I mean, we don't, there's nothing in the record that would support that, but I did mention that he was quite aware of the impact of the 1962 election on himself and other similarly situated small business owners. Of the statute, but the statute is not being challenged here. It's a regulation. The statute is not being challenged. That is correct. Right. So the fact that he might have been aware of, of implications of the statute doesn't suffice for purposes of standing to challenge the regulation under the regulation. Our focus is solely on the regulation under 965 and 962. So can you focus on what shows that the burdens that Mr. Silver has identified are attributable to the amendments to the 962 regulations that were finalized in 2019 to the incremental clarification offered at that time, as opposed to the underlying statute or prior rules? A small businessman trying to figure out what the ramifications were of these, of the statute, but through the regulations, would only know, would only know about the, the provisions of the regulations that would allow him to take it, to take advantage of foreign tax credits or deductions after the statute nullified that possibility. It was only through the regulations and through the regulation process. Indeed, 962, the amendments to 962, section 9, the regulations, 1.962-1 through 3, all of those were the first place that a small businessman would know that he, she could take advantage of the foreign tax, income tax deductions or credits to offset transition tax liability that was imposed under 964, 965, only through the regulations, Your Honor. And that is exactly what Mr. Silver did in this case, both before, during the rulemaking process and also during and afterwards when he himself had to file his returns in order to require under the regulations. Now, under 962, which derived directly from the regulations under, under 965, he would have to go through this complicated process of not only making the election, but calculating each time in the future, for the foreseeable future, he would take an actual dividend distribution from some profits of the Israeli company. And that was a regulatory, you know, catastrophe for him and for others like him. Because it's, if you, as soon as you have, Your Honor, you've tried to read these regulations, they are truly impenetrable. But it's, and that is exactly the point. That's what this Regulatory Flexibility Act was, was initially enacted to do. And when Congress amended it in 1996 to create a new entry and a new set of remedies in order to give petite into its, its mandate to the federal regulatory arena, including the Treasury and the IRS. What they said was, now you're not going to be able to walk away from your responsibilities under this statute. We're going to give small entities, like Mr. Silver and the company, the right to go into court to challenge your attempt to circumvent the RFA requirements. So, Mr. Zell, is it, I'm sorry to interrupt. No, no, go ahead. Is it fair to say that Congress in enacting this statute has called for a very difficult, complicated calculation in terms of the way it allows, it has the transition rule and then the implications of the transition rule treatment on the treatment of future dividends. That's, that's a bit of a complicated requirement. And I mean, it's helpful as I hear you today, you're saying, and then given that that is a hard thing to do, but it's what the statute requires, the Regulatory Flexibility Act calls on the IRS to make sure that its regulations make that easy. Exactly. And that is, and that is what did not happen in this case. In fact, after three years, Mr. Silver and the company are still attempting to get the court, the courts here, to reach the merits of their complaint. That is, was the certification made under 605B adequate, a proper one, given the criteria. And when you actually look at the administrative record in this case, the kinds of things that the agency was saying, you know, like foreign corporations can't be small entities, individuals can't be small entities, small businesses, CFCs, you know, speaking as one who lives abroad and has more than one of these myself, I can tell you that's absurd. And, but all that Silver and Silver Limited are asking in this case was simply, please take a look at what they've said. Was it not so much the complexity of the existing rule? Well, they needed to explain how this cluster of rules. See, when you cluster, my first take on that is that that doesn't help you. Because to the extent that the compliance costs flow from the statute or from the pre-existing rule, that's not before us. That's not encompassed in your regulatory flexibility. The cluster of regulations I'm talking about, Your Honor, are the amendments to those regulations that Treasury promulgated in 2019. What about the 2019 amendment? Can you point specifically? Take a look, Your Honor, if you may, I'm going to repeat it to you from memory of Treasury Regulation 1.962-1. That's in the appendix. You'll see... Give us a page sign. ...appendix at 188 to the end, really. And there's also one regulation that's not in here. Okay, there's three regulations. The two that were amended are here. There's a third that wasn't amended, which is 1.962-3, which is also... It actually deals specifically with the question of actual distributions from earnings and profits under that section. But if you look at 1.962-1, you'll see one of the important, the critical decision or critical change that was made in the regulations, something that the government continually described as minor and inconsequential, is over at 1.962-1B, A1A. And you'll see in little i, you'll see there for the first time... Which page are you on? Page 189, sorry, of the statutory agenda. The critical change that was made in the 1.962 regulations... By the way, I mean, these are regulations that hadn't been altered in... It's 1965. And then suddenly, as a result of the transition tax, TCJA, Treasury, changed them in a significant way by requiring, for the first time, defining that subpart F income would now include, for the first time, section 965A inclusion amounts. Those are the amounts that would now be coming in as a result of the transition tax. So that regulatory amendment, then, is at the center of what I would call a cascade of regulatory changes that all center around 1.962, which allows small businesses, for the first time, to be able to take and to offset their transition tax liability with foreign income tax credits or for these purposes, I take to be the declarations of Mr. Silver. Is there any identification of the compliance costs relating not to the initial election, which is past conduct, but relating to the figuring out of the dividend? Well, the declarations, you will see the declarations specific statements that actual distributions are contemplated, they will be you'll have compliance costs. I don't think that even the government doesn't. And that is where? Now, well, let me show you. You look at the plaintiff's declaration, this is in the J8, at 107 to 112. You'll see one declaration in support of the memorandum in opposition to the government's motion summary judgment. You'll see another one at EC, excuse me, at J168 to 172, your honor. And that's number four. That's the one that came in on the rule 5098. Yeah. And the particular language in the in declaration number three that you would rely on, which is 108. Is that the 108? Yeah, just a second. Okay. He starts with paragraph four, paragraph five. Also, if you look at our brief, we have discussed this at length. And I would also point out, as we deal with this article three standing requirements, as we discuss both below and in the reply brief. Oh, I see my time is over. I'm parking over the red light. Sorry about that. Can I just ask you this page that you I don't see any of this in your briefs on the traceability point that Judge Pillard was asking you about. The treatment of it in the blue brief is wholly perfunctory and the treatment of it in the reply brief is just quotes a paragraph from the district court and says the district court got it wrong. So where have you traced the injury, tried to trace the injury of future compliance costs to the new regulations at any point before your presentation this morning? Well, the first thing I would start off, Judge Katz, is to say that the silver and silver limited are the objects of these regulations. This court and the Supreme Court has stated on a number of occasions that when that is the case, the standard for showing article three actual injury and the other elements is very low. Just on that, how would you respond in terms of whether silver and silver limited are objects of the regulation? Silver isn't a small entity under the statute and limited isn't subject to these regulations because it's a foreign corporation. Well, the first response I have, Judge Pillard, is that silver is a small entity. For purposes, for real estate purposes, unrelated to this case. Not just real estate purposes. He is, he meets the requirements of a small entity under the terms of the RFA, at which the term incorporates the definition of the Small Business Act. Government tries to argue he's not an entity. And so, it cites no authority whatsoever for that proposition for the first time in its brief here in this proceeding. But if you look at the dictionary definition for entity, you'll see, as this court has in a previous case, not an RFA case, but back in 1997 under the Association of, or Allied Association of Alarm Services case, which is cited in our brief, they specifically talked about the definition of the term entity, which includes natural persons. All right. All right. We have taken you over time with our questions, but we will give you a couple of minutes for everybody. Thank you very much, Your Honor. Good morning. Is it Mr. Klimas? Klimas. Klimas. Thank you, Your Honor. May it please the court, Jeff Klimas for the attorneys. Your Honor started her questions with standing this morning, and we think the standing is dispositive of the merits portion of this case. I will start there. And I think that Your Honor correctly focused on traceability. For purposes of the Regulatory Flexibility Act, the question is the burdens and costs of compliance associated with the rule. Here are the challenge regulations at issue. That's tracked through section 603, 604, 605 of the Regulatory Flexibility Act, which talks about the impact of proposed rule on small incidents, the projected reporting, record keeping, and other compliance requirements of the rule. If an agency certifies that a full-blown RFA analysis is not required, it talks about a certification that the rule will not have a significant economic impact on a substantial number of small incidents. Here, I want to make this clear. If Treasury tomorrow were completely rescind regulations at issue, the 2019 package of regulations, it would not add to or decrease the compliance costs of Mr. Silver going forward. None of his future compliance costs are traceable to either the 965 regs or the amendments to the 962 regs. All those compliance costs are traceable to other sources. We walk through in our briefing the different sources of compliance costs that Mr. Silver is complaining about. He talks about foreign tax credit. That is traceable to section 902 and 960 of the Internal Revenue Code. He talks about dividends tainted and untainted by 962 election. That's traceable to section 959 of the Internal Revenue Code, 962D statute, the Internal Revenue Code, and the pre-existing portions of the 962 regulations that the United States and Israel, which again, not traceable to the rules. He talks about this notion of qualified and non-qualified dividends, which is traceable to section 1H11B of the Internal Revenue Code. Again, not at issue. The complaint agreements that Mr. Silver has is not with the rule itself because that does not impose a forward-looking burden on compliance costs. The complaint that he feels tomorrow would have the same compliance costs going forward. Not one iota of compliance costs are added by these particular regulations. This is not. I somewhat heard him to be arguing this morning, and this wasn't how I took the argument in the brief, so that alone may be dispositive, but that his argument, in effect, was the statute calls for something pretty different. The pre-existing rules are not very user-friendly in terms of marking a path. My clients didn't have to worry about that because they never became subject to them until now, and at least it was incumbent on the service in promulgating its latest rule to give us a roadmap. His traceability argument, if I'm summarizing it correctly, is that the failure to make sense in the latest encounter with this rule under this provision is itself what's the source of his harm. Yes, Your Honor. What's contemplated by review under the Regulatory Flexibility Act, which tracks review under the Administrative Procedure Act, what we're reviewing here is the final agency action, and specifically because of the special limitations requirement in 611 of the RFA, we're looking at final agency action that occurred within the past year. It's not looking at agency's failure to act. It's looking at what the agency actually did, and when you look at what the agency actually did, you're looking at the incremental burden of that rule. So, roughly, you'd say that sort of the sin of omission as opposed to commission is not cognizable. It's not what's at issue under the Regulatory Flexibility Act. That's correct, Your Honor. If, for example, Treasury had promulgated no regulations whatsoever, it's hard to imagine that Mr. Silver would have a valid Regulatory Flexibility Act challenge. Or had promulgated something, just to make it a little bit harder for you, had promulgated something that basically tracked the statute. Sure, if we made it a parody regulation, if the regulation tracked word for word for victim what the statute says, would there be a valid Regulatory Flexibility Act challenge when we say, well, look, there's no incremental burden that's being added by these regulations. It is literally reciting word for word what the statute does, and it's not an obligation that's imposed by the RFA or Treasury or any other agency to try to alleviate burdens that Congress deliberately imposed with the plain text of the statute. That's where we part company with other counsel insofar as we're saying, what is the relevant cost? What is the relevant burden? And we think it's clear on the Regulatory Flexibility Act that any incremental cost or compliance related to the final agency action, the rule, and there just isn't any incremental burden added by these particular regulations. As a matter of the record, can we consider the dividend at all? And if not, why not? So prior to summary judgment being granted, there was no evidence that limited had ever issued Mr. Silver a dividend in the past. So 2012 all the way through 2020, no evidence that in those eight years, a dividend had ever been issued. There was no evidence of a present or future intent that Mr. Silver would direct limited to issue a dividend in the future. But at the summary judgment stage, at the time that this case was decided on the merits, there was no evidence of either past dividends, present intent to issue a dividend, future intent to issue a dividend. And so when he came out of reconsideration, the district court said he was too late. To the extent that this was evidence that he could have proffered earlier, it was foreclosed from raising that reconsideration. We cite this court's decision in Leidos for that judgment. And coming to existence later, they were also not properly the subject of reconsideration. We cite National Anti-Hunger Coalition in our briefs for that court's decision in that case. So there is a question of timing. And we want to be clear, the appellants have not separately challenged the court's holding on that. The court said this was not timely raised. It's not excusable. I'm declining to allow you to post a decision and bring in this evidence that was not properly before the court. Not in their opening brief, not in their reply brief, do they address that part of the court's holding. And we think that it's waived. We think that they are stuck with that rule. In addition to the merits question, there is a question about the technical issue. I'm happy to address that, although we don't think it's properly before the court and ripe at this time, because there is pending supplemental briefing on that issue. Oh, yeah. I guess we have to, if we rule in your favor on standing, we still have to consider the disclosure issue, including the question whether to reach it. Your Honor, that's right. You have to, you say one way or the other, we are going to reach 6103 disclosure protective order issue or not. But certainly that could be reserved for a later date, considering the fact that there are essentially two arguments for why this information shouldn't be public. One of which- 6103 and Hubbard. Right. 6103 is resolved, Hubbard is pending. Exactly. And neither of those is collateral to the other. Those are interrelated. So we can't take up, shouldn't take up, even though the disclosure issues are collateral merits. Precisely. Yeah. So the 6103 issue is a cannot. The Hubbard factors are a should not disclose in effect. And to the government, it makes sense that those issues be considered together. Instead of seriatim, you know, and potentially subsequent appellate. So you're asking us to remand that? We think that would be appropriate. And save that issue for later. Remand it or just not- It's not addressed on this time. You call it, right? Correct. On some threshold round like that. Correct. It's just not properly before the court at this time until there's a final decision of the protective. Right. Not a final one. So the relief here is, as you describe in your brief, and the only responses I read from the individual and the limited corporation, is that this is too complicated. Namely, to pay whatever tax you owe and then file for a REMA fund. Is that right? Yes, Your Honor. In terms of the Anti-Injunction Act issue, where we're saying that there is another remedy, another procedural vehicle for addressing Mr. Sullivan Limited's concerns, separate and apart from a freestanding RFA suit. That a refund suit would be an alternative remedy, such that you wouldn't have to bring a suit to enjoin the enforcement of these statutes that impose taxes, as well as some of the regulations that talk about calculation of those taxes. I guess we don't- I guess the only point I want to get on the record is that from your perspective, there is a remedy available to him. Whether he brought raised in the instant complaint or in his brief, some of these arguments that are being made today in response to Judge Pillard's questions. Yes, Your Honor. The argument that it's too complicated, and I think that you're right, that's the only real pushback that we're getting from the opponents in this case, that they think that a refund suit would be too complicated. That's not really the case. Well, we don't need to decide that, do we? I mean, the point is, whether the remedy is complicated or not, it's the standard remedy for people who challenge taxes. That's correct, Your Honor. It's done as a matter of course, where someone will take a conservative position on an original tax return, and then file an amended return that takes a more aggressive position. They'll pay the tax for the original return, and then sue for a refund in conjunction with that amended return. And it's often done just as a matter of course, in one of the middle type of tax issues, because it stops interest from breaking. And so there's a strategic advantage to doing it that way. This is done by tax practitioners all the time. File a tax return, pay the tax, file an amended return, claim a refund. The situation that was contemplated, that was being pushed back against in Cohen, was the notion that someone should run into court with a tax refund suit without exhausting administrative remedies. The majority in Cohen pushed back and said, well, no, no, no, that's not the normal procedures. We think that's kind of a convoluted and extravagant remedy to come up with that hypothetical. That's the exact opposite of what we're suggesting that Mr. Slover should do, which is to follow to the letter the regulations and statutes governing tax refund claims and tax returns. Other questions? All right, thank you. Thank you, Your Honor. Mr. Zell, your time had expired, but we, as I mentioned, will afford you two minutes for rebuttal. A couple of things. First of all, with regard to the wrongful discharge, wrongful disclosure issue under 6103, I'm now representing to the panel that Mr. Slover and his wife will have no, will abandon any right or privilege they may have under the inherent authority of the district court to control his docket, in other words, the Hubbard line of cases. That leaves this court free to make a decision one way or the other on whether or not 6103 was filed. Abandoning your Hubbard objection, continuing to press 6103. That is correct. Now, let me just also address the issue that your honors were pressing during my... And you'll let the district court... We'll file a written confirmation to that effect. That's right. Now, with respect to traceability, the district court actually got this correct during our argument on summary judgment. We're not for section 965 and the regulations under 965. There would be no issue about 962 and the regulations under 962. That's a direct traceability argument. They are particularly under the lower standard of Article 3 standing, a review that applies in an object of situation and in a procedural injury case. I realize with respect to procedural injury, only eminence and addressability are relaxed standards. But nevertheless, this is a very, should be a very recent. And the primary problem that the district court had in this case was about the speculative nature of Mr. Silver's intention that he would have future compliance costs by reason of his actual distributions in the future. As we indicated in footnote 5 to our reply brief, he has taken the distribution. That's now... We've crossed that threshold. And he's now going to have to, and as he has done, he'll have to go through the whole complicated analysis under these regulations in order to determine whether or not he has to revise his or take into account the results of the transition. On this record, I noticed that he had now taken it and it made me wonder whether any traceability that might have been established relating to an anticipated dividend is now moot and we don't have any record evidence of an anticipated additional dividend. So in some ways that complicates our consideration on this record. Well, I anticipated this question, Your Honor, and it seems to me that if we go that route, a person's small business owners like Mr. Silver will never have an opportunity to raise this kind of question unless they... I think as you frame the case, the way to raise it would be at the outset to say once the election is made, there will be compliance costs associated with periodic dividends and for X, Y, Z reasons, we anticipate definitely having dividends in the future. And that is not the... I'm sorry, Your Honor. That is exactly what I argued to the court on summary judgment. And the court said, well, I can't accept your statements because they're arguments of counsel. This is a legal issue. What possible allegation could Mr. Silver have made other than what he did that I anticipate taking an actual distribution in the future? I see my time has expired again. Thank you, Your Honor. Thank you, counsel. And thank you for traveling all the way here to make your argument. The case is submitted.
judges: Pillard, Katsas, Rogers